# SENTENCING MEMORANDUM ON BEHALF OF EDWIN VARGAS

Docket No. 13-CR-535-01 (PKC)

Honorable P. Kevin Castel

Sentence Date: June 2, 2014

**LIST OF EXHIBITS**

Letter to the Court from David Sanchez.……………..………......…..…………………….Exhibit A

Letter to the Court from Janet Cotto…………...…….………….…...…….....………….Exhibit B

Letter to the Court from Wanda Ramos…......…………………………………………Exhibit C

Letter to the Court from Police Officer Wilson Colon……....……..………….................Exhibit D

Letter to the Court from Sergeant Ahken Chu…………………...…………….……Exhibit E

Letter to the Court from Detective Carlos Faulkner…………………..…………….…...…..Exhibit F

Letter to the Court from Retired Lieutenant Edwin Maldonado…………...…………….…Exhibit G

Letter to the Court from Terese Prenty……………….………….…………….….…....Exhibit H

Letter to the Court from Sergeant Angel Rosa……......…………………………….…….Exhibit I

## I.   INTRODUCTION

This memorandum and attached exhibits are respectfully submitted for the Court's consideration prior to imposing sentence on Edwin Vargas.  Mr. Vargas recently retired as a detective with the New York City Police Department, having spent nearly his entire career serving the communities of the Bronx, where he was raised. His family, friends, and colleagues describe him as a great public servant, a dedicated police officer, and a loving father. Prior to the instant matter Mr. Vargas has had no issues with the criminal justice system, and served this city with distinction. He has no prior criminal convictions or arrests.

In summary, Mr. Vargas allowed his deep emotional connection to his former girlfriend, and the fact that they have a child in common, to drift into mindless jealousy. He used resources available to him at his job, along with an email hacking service he found via Google, to gain information he thought would give him peace of mind regarding her activities with other men. He didn't act on this information in any way, either by using what he found to his advantage or tampering with the messages he did read. He did, however, intrude on the private communications of a number of people—his ex-girlfriend, friends of hers, friends of his, and coworkers—all for the purpose of assuaging his misplaced feelings of jealousy and protectiveness. In hindsight, he understands that his actions were misguided and wrong, and he is remorseful. Thankfully, he has been able to maintain a civil relationship with his ex-girlfriend and is able to be a part of his child's life today. She filed no family court or other proceeding against him, and there is no order of protection in existence.

Mr. Vargas made little effort to hide his actions—he is not particularly computer literate and the information he gained was not hidden. The initial complaint of a suspicion of email tampering led investigators to a trail of information about others whose accounts had also been viewed. On May 21, 2013, Mr. Vargas was arrested and charged with two misdemeanors:

[1]

Conspiracy to Commit Computer Hacking, 18 USC 1030(b), and Unauthorized Access of a Law Enforcement Database, 18 USC 1030(a)(2)(B). Mr. Vargas was forthcoming about his actions to law enforcement, including during an official internal NYPD interview (known colloquially as a "GO-15"), where he laid out his actions in detail to his superiors.

On November 8, 2013, Mr. Vargas appeared before your Honor and pled guilty to both counts, accepting responsibility for ordering the hacking of personal email accounts and accessing the National Crime Information Center database without authorization. Mr. Vargas showed recognition of responsibility for the offense and provided timely notification of his intention to plead guilty.

Reflective of his standing as a twenty-plus year veteran of the NYPD, the Police Department chose not to fire him, even after his guilty plea. Instead, with the permission of then-Police Commissioner Kelly, Mr. Vargas pleaded guilty to internal NYPD charges similar in nature to the charges in this case and was allowed to retire with a full service pension.

Mr. Vargas is now before your Honor awaiting sentencing.

## II. PERSONAL AND PROFESSIONAL HISTORY OF EDWIN VARGAS

### A.  EARLY YEARS

Mr. Vargas was born on November 11, 1970, in the Bronx, New York. He is the son of Radames Vargas, Sr. and Iris Alicea. Mr. Vargas' father worked as a barber and died from emphysema in 2006. Mr. Vargas' mother is currently in her mid-60s and is supported by social security disability benefits due to mental health problems. Mr. Vargas' parents divorced when he was two years old. He was raised by his father because his mother suffered from schizophrenia.

Radames Vargas, Jr., Mr. Vargas' brother, is in his mid-40s and resides in the Bronx, New York. He works as an electrician. Mr. Vargas' maternal half brother, Pedro Ramos, is in his early 50s and resides in Fort Myers, Florida. He is a retired door man. Mr. Vargas' maternal half sister, Elizette Ramos, is in her late 40s, and resides in the Bronx, New York. She works in a factory and suffers from mental health problems. Mr. Vargas had a brother, Andres Vargas, who died from kidney complications at age 33.

Growing up, Mr. Vargas was raised by his father. His paternal grandmother and paternal aunt, Delores Vargas and Ester Sanchez, helped his father raise him. His family was supported by food stamps. Mr. Vargas' neighborhood growing up had a lot of crime. As a result, Mr. Vargas was encouraged to attend school and play baseball on the weekends.

Due to Mr. Vargas' mother's schizophrenia and a family court order, Mr. Vargas did not have contact with his mother during his childhood. When he was 18 years old, he attempted to reconcile with her. However, they did not maintain regular contact. Mr. Vargas has not had contact with his mother in the past two years.

In 1999, Mr. Vargas met Maritza Miranda, now age 43. She was employed for a medical supply company. The couple married on August 11, 2001. However, they later divorced in 2007 due in part to the long hours of Mr. Vargas' employment as a police officer.

[3]

In 2009, Mr. Vargas met fellow New York City Police Department Detective, Annette Francesquini. They dated for approximately one year and they have a son, Tristan Radames Vargas, who is now four years old. Mr. Vargas is no longer in a relationship with Ms. Francesquini. (She is the person whose email Mr. Vargas first attempted to access.) Mr. Vargas maintains regular contact with his son, who spends the weekends at Mr. Vargas' home.

**B.  EDUCATION**

Mr. Vargas graduated from Theodore Roosevelt High School, located in the Bronx, New York, in 1989. He attended John Jay College of the City University of New York between 1992 and 1993. He stopped attending when he was hired by the New York City Police Department.

**C.  EMPLOYMENT**

From 1993 to early 2014, Mr. Vargas had been employed by the New York City Police Department. In 2003, Mr. Vargas was promoted to detective and was assigned to the 40th Precinct in the Bronx, New York. He was routinely rated at or above standards in his performance evaluations, and was looked upon by his colleagues as a hardworking, honest and diligent law enforcement officer. He had no formal disciplinary history in his 20 year career prior to this arrest. As a result of his arrest in the instant matter, Mr. Vargas was suspended for 30 days on May 21, 2013. He was then returned to duty on modified assignment until his retirement.

[4]

### D.  PRESENT FAMILY CIRCUMSTANCES

Mr. Vargas' family, friends, and former colleagues are willing and able to provide him with

the necessary support that he needs. They regard him as a dedicated police officer and a loving

father. We have included letters from Mr. Vargas' relatives, providing a window into his

dedication to his family and community. David Sanchez, Mr. Vargas' cousin, writes the

following:

> Edwin Vargas is my cousin but we grew up together so I consider him as my brother. All my life he has looked out for me and the family, when there is any hardship in the family Edwin is there to the rescue. Family means a lot to him, I see the way he interacts with his son Tristan they are inseparable. Edwin served 20 years as a police officer and served the community and was dedicated to his job. Something that I'm proud of is in the 20 years Edwin was just, fair, and treated the people he encountered with respect. He never mistreated anyone because he was a police officer. That is reflected in his tenure as a cop, this is the first time that he is alleged to have violated his oath.

Janet Cotto, Mr. Vargas' niece, describes Mr. Vargas as an "excellent father" and "best

friend." She writes the following:

> Day in and day out, my uncle Edwin Vargas, put his life on the line for his family and the people of New York. He is an excellent father, our best friend, and the reason why I decided to become a Law Enforcement Officer. Please do not be mistaken, we are not trying to justify his action. We are just asking for you the people of New York, the people that he protected to understand that Detective Edwin Vargas made a mistake.

Wanda Ramos, Mr. Vargas' other niece, wrote to the Court describing how Mr. Vargas

has been a father figure to her and the effect that this case had and will continue to have on

Tristan, Mr. Vargas' four year old son. She writes the following:

> My uncle has been a father figure to me all my life. I can confirm that he is a man of great integrity, is extremely dedicated to his family and work, and is entirely peace-loving. Despite not having my own father in my life, he has guided me throughout my life. I don't want his son to be affected by his father's absence the way my life was affected. My cousin is very young and would be affected by my uncle's absence. I remember all the days I cried myself to sleep not having my own biological father in my life. I would hate for my cousin not to understand the reason for his father's absence and be affected by it in the long run. I strongly believe that my uncle is loving and generous with his family especially with his own son. He always gives great advice and I look up to him. I don't know what I would do without my uncle being in my life.

[5]

Wilson Colon, a friend and colleague of Mr. Vargas, describes Mr. Vargas as a mentor at

the New York City Police Department. He wrote:

> Rarely when doing this field of work do you come across a person who you can call a brother, confidant and friend. So is the case with Eddie Vargas, whom I met sixteen and a half years ago while arriving at the 40th Precinct as a rookie in the summer of 1998. It's always difficult going into a new line of work, especially one that may put in harm's way by not protecting your fellow officers but those you swore to protect and serve. Eddie, as our training officer knew how to keep me and my fellow officers at ease. Eddie Vargas, with all the experience he gained while patrolling the streets of the 40th Precinct was ready to take on not only me and my graduating class but future police officers as our mentor to help us become better police officers. Make no mistake; the job of a training officer was a difficult one but Eddie made no hesitation in taking the role as teacher and mentor because that was the type of person Eddie was and continues to be until this day.

> Eddie, whether at work or home would always go the extra mile to make sure you were okay and that's what made him special. Eddie would always put others in front of himself and that's what made him stand out from the other officers I worked with. Eddie always carried himself with respect and dignity and I only hoped that I could be half the person he was.

Ahken Chu, Mr. Vargas' supervising sergeant, describes Mr. Vargas as a "leader" and

"kind hearted." He wrote to the Court:

> My relationship with Vargas is one that began in the work environment, with myself acting as his supervising sergeant of the NYPD. As Vargas' training Sergeant I was there from the start of his career, watching him excel onwards to patrol officer, then advancing onto roles including the responsibilities of assistant Sergeants, up to his final rank of detective. Vargas executed his job with the highest of integrity, courtesy, and service. His character is one of a leader, his actions and efforts honorable and kind hearted.

> Within the time that I came to know Vargas, he extended his friendship to me, having been there through my lowest of times. In extreme moments of life's difficulties Vargas has extended himself, offering help and support, and loyalty. As a father Vargas is outstanding in his commitment to his child making sure to supply all that is needed while also offering a nurturing spirit. I hope that Vargas' judgment and sentencing is taken with consideration for his character, with fairness and leniently.

Fellow Bronx Detective, Carlos Faulkner writes:

> As I sit here writing this letter in my office and look over at his old desk, I can't help but remember him working diligently on his cases and all the pictures of his 4 year old son, Tristan, pinned to the board at his desk. I remember how Vargas would speak with fondness and a glee in his eyes about his little boy Tristan. I can't imagine Vargas a single day without him. And as a father myself, I know it would be hard for me to cope.

> When his arrest occurred, it was of great shock to me, and I could only imagine that his family must have been devastated too. But for some reason it did not change my thoughts and feelings for Vargas as a working partner and a great friend—he is still a good person. It showed

[6]

more when he accepted responsibility for his actions and admitted guilt to all the charges against him.

Mr. Vargas' former colleague and retired NYPD Lieutenant Commander, Edwin

Maldonado, describes Mr. Vargas' professionalism while on the job. He writes:

> I have known Edwin Vargas since June 1992 when we both entered the New York City Police Department as rookie officers. Although much of our interaction and discussions were as young officers with a common goal to protect and serve the citizens of New York, my respect and admiration for Eddie grew in 2005 when I was assigned as the Commanding Officer of the 40th Precinct Detective Squad. Eddie was one of my dedicated Detectives that I was privileged to have on my team. In describing the type of Detective Eddie is, one case that immediately comes to mind was a gang related homicide that Eddie investigated. The victim was shot in front of his building just off of Prospect Avenue. This was a location known for violence and the crimes often lacked witness cooperation. Due to the gang element of the case, many Detectives would be quick to conclude that we would be met with little or no cooperation. I immediately noted how caring Eddie was of the investigation based on his interview and in the way he consoled the victim's mother. Eddie made himself available to the family, he reassured them that he would do all he could to find the persons responsible and that justice would be served. To Eddie, these were not just the words that a Detective would routinely say to console a family, these words were his verbal contract to the family, assuring them that through his determination and commitment, he would do all he could to find the shooter. It was no surprise to me that Eddie found willful cooperating witnesses and that the investigation ended with the apprehension and arrest of the person responsible. This was only one of countless examples of the professionalism that depicts the type of employee, investigator and friend that Eddie is.

Two of Mr. Vargas' life-long friends, Terese Prenty and Sergeant Angel Rosa, write to

the Court describing how remorseful Mr. Vargas is currently. Terese Prenty writes the following:

> I believe that Edwin Vargas is sincerely sorry for what was done and there was never intent to hurt anyone. I also believe in second chances. I will continue to admire Vargas for the person he is and for the wonderful and loving father he is to his son.

Sergeant Angel Rosa writes the following:

> Your Honor, I know this man to be honest, caring and supportive and ever since his son Tristan was born, he has doted on his son like no other dad could. Your Honor I can tell you for a fact, that Edwin Vargas regrets what he did, he is ashamed and he is truly sorry to everyone who was hurt by his actions. Your Honor, Edwin Vargas does not belong in jail. This is a good man and I am positive that if given the opportunity and his freedom, he will do anything to correct the wrongs he's committed.

> Your Honor, I personally vouch for his man and promise you that I will also do whatever I can to help Eddie continue to be the law-abiding, upright and contributing member of society he has been for the past 35 years. Your Honor, I love this man like the brother he has become. Please grant him his freedom so that he can continue to be a productive member of his community and loving father to his son.

### III. SENTENCING CONSIDERATIONS UNDER 18 U.S.C. §3553(A)

[7]

Ultimately, we suggest that a sentence outside the guidelines, as per 18 U.S.C. §3553(a) is appropriate here. As the Court knows, the statute instructs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" as outlined below.   We respectfully suggest that the balance of all of these factors weigh in favor of a non-incarcerative sentence, which would meet the sentencing goals of punishment and deterrence. Mr. Vargas, who has served his community for the last twenty years, would be an ideal candidate for a hefty sentence of community service, along with whatever community-based options the Court believes to be appropriate.

***Nature of Offense and the history and characteristics of the defendant:***

Nothing herein suggests that the crime which has brought Mr. Vargas before this Court is not serious, nor do we intend to downplay that seriousness.  We ask only that it be viewed in context.  Mr. Vargas has always worked for a living.  His criminal actions took place over a relatively short period of time. He is a long time member of the New York City Police Department and had admirably climbed the ranks to Detective.

Understandably, the fact that Mr. Vargas was a law enforcement officer with a duty to uphold the law and protect the people of New York can cut both ways. However, a single instance of—admittedly—extraordinarily bad judgment cannot undo the good works of twenty years, or a lifetime. Furthermore, we would ask the Court to consider the finding of the Fifth Circuit in *United States v. Chandler*, No. 12-30410 (5th Cir. Oct. 4, 2013), which also references *United States v. Stout*, 32 F.3d 901, 903-04 (5th Cir. 1994):

> Some of the comments made by the district court here, such as those stating that by being a police officer Chandler has placed himself in a different category and should be held to a higher standard, are similar to those in *Stout* and could be interpreted to cross the line into impermissible reliance on Chandler's socioeconomic status as a police officer.
> To the extent that the district court's comments regarding Chandler's position are findings that Chandler abused his position of trust or that the offense was more serious because of

[8]

Chandler's position, the district court likewise erred. Though we are mindful that our review in this case is only for plain error, our circuit precedent is clear that a defendant's status as a police officer, standing alone, is not a justifiable reason to increase a sentence.

There does not appear to be a similar set of precedents in the Second Circuit.

### *The Need for Deterrence*:

To the extent that criminal sanctions do have a general deterrent effect, the certainty and swiftness of punishment have a far greater deterrent effect than the severity of the sanction.  Mr. Vargas was swiftly arrested and his arrest received widespread attention in the local and national press. His nationwide shaming has had a vast general deterrence effect on its own. Now that Mr. Vargas' family relationships with his ex-girlfriend and son have settled down, there is no reason to believe that an appropriate non-jail sentence will be insufficient for the purposes of specific deterrence.

## IV. SENTENCING RECOMMEDATION

As noted above, we respectfully request a non-jail sentence with a significant community service component and any of the community-based supervision methods the Court finds most appropriate. This will allow for appropriate punishment while allowing Mr. Vargas to remain close to his support network of family and friends, as well as his son.

[9]

## V.  CONCLUSION

As detailed extensively above, we believe that in this case our sentencing recommendation would provide an adequately onerous sentence that would be in keeping with and would not compromise the needs of justice: a sentence sufficient, but not greater than necessary. We ask the Court to consider the following words from his niece, Wanda Ramos:

> He is a good person who deserves a chance. Convicting him and sending him to prison would only expose him to further bad influences. I humbly ask you to please give him an opportunity to set his life back on track and not let a bad decision alter his life's direction. This has been a major toll on our family and we patiently wait to put this behind us. Thank you in advance.

Respectfully submitted,

BRILL LEGAL GROUP, P.C.

By:     Peter E. Brill
        15 Maiden Lane
        Suite 1500
        New York, NY 10038
        (888) 315-9841

[10]